RAY v. ARKANSAS FERTILIZER COMPANY.

Opinion delivered February 18, 1924.

1. APPEAL AND ERROR—APPEAL FROM JUDGMENT ON DIRECTED VERDICT.—On appeal from a judgment on a directed verdict, the evidence must be given its strongest probative force in appellant's favor.

2. BILLS AND NOTES—JURY QUESTION.—In an action on a note given for fertilizer, as collateral security for which defendant was to transfer to plaintiff the notes or accounts of the farmers to whom defendant sold the fertilizer, evidence held insufficient to warrant submission of the question whether the parties subse-

quently entered into another contract, under which defendant claimed certain credits on the note.

Appeal from Grant Circuit Court; *Thomas E. Toler,* Judge; affirmed.

*Isaac McClellan,* for appellant.

The court ought not to have taken the case from the jury, as there was evidence to support the defendant's contention, and it is error to direct the verdict where there is conflict in the evidence. 35 Ark. 147; 36 Ark. 451; 37 Ark. 580; 62 Ark. 63; 63 Ark. 94; 71 Ark. 445; 76 Ark. 468; 77 Ark. 556; 84 Ark. 57; 96 Ark. 451; 99 Ark. 490. The evidence should be viewed in the light most favorable to the party against whom the verdict was directed. 73 Ark. 561; 89 Ark. 368.

*R. R. Posey,* for appellee.

Cases cited by appellant have no application here. If he had a contract, it was a written one. The alleged contract relied on was never signed and approved by the fertilizer company. The minds of the parties never met. 76 Ark. 237; 145 Ark. 394; 97 Ark. 613, 121 Ark. 150; 90 Ark. 131; 95 Ark. 421. The suit is based upon a promissory note, the execution of which is admitted. The contract set up by the defendant was no defense, as it was never executed. Moreover, it was no part of the note sued on and could not be set up as a counterclaim or set-off. 129 Ark. 354; 99 Ark. 224; 128 Ark. 433; 129 Ark. 346; 158 Ark. 75.

WOOD, J. This is an action by the appellee against the appellant on a promissory note in the sum of $612, bearing date of April 29. 1921, and due Nov. 1, 1921, with interest at the rate of 10 per cent. from maturity until paid. The appellee alleged that there was a credit of $115.61, and a balance due of $530.13, for which amount it prayed judgment.

The appellant, in his answer, admitted the execution of the note, and set up that he was entitled to two credits on the note, leaving a balance due the appellee of $283.39. Appellant alleged that for the year 1922 the appellee sold

appellant six tons of fertilizer, which it was to ship to appellant at Sheridan, Arkansas; that appellee failed and refused to ship such fertilizer, to appellant's damage in the sum of $600. Appellant prayed that he have the credits as alleged, and that he have damages in the sum of $600, and that these sums be offset against the note, and that appellant have judgment for the balance. The appellee attached to its complaint and introduced in evidence the note in controversy, which contains many provisions which it is unnecessary to set forth in detail, the effect of which was a contract between the appellee and the appellant by which the appellee sold to the appellant fertilizer for year 1921. As collateral security for the notes executed for this fertilizer, appellant was to transfer to the appellee the notes or accounts of the farmers to whom the appellant sold the fertilizer. After the note became due, the appellee and appellant had a lengthy correspondence concerning same, which is brought into the record, and is substantially as follows:

On December 23, 1921, the appellee wrote the appellant asking him when it could expect payment of the balance due on his note, and stating that it expected full payment. Appellant answered on December 28, giving at length the reasons why he could not pay, and concluding by saying that he could not pay the balance due until he made and sold another crop, unless appellee would let him sell fertilizer for it for the coming season, and stating that he would like to sell on a commission basis per ton, appellee to deliver f. o. b. cars at appellant's station, and appellant to sell and deliver to the customers and take notes in the name of the appellee, appellant's commission to be applied on what he owed appellee until payment was made in full. Appellee replied to this letter, December 30, asking appellant if he could not give security for the balance due, in form of the signature of some of "your friends or relatives who are willing to help you over this difficulty, or by mortgaging some of your chattels or crop," and stating, "give us a statement of your position in this regard, and we will be able to

write you fully as to what we can do relative to carrying this over for you.''

On February 4, 1922, appellee wrote appellant, referring to a letter of appellant of the 2d, which is not in the record, but in which, from the appellee's letter, appellant evidently had told the appellee that some one else was offering him fertilizer at a cheaper price than the appellee. In the letter of February 4 appellee states the prices offered appellant by others were higher than appellee's prices. This letter concludes by saying: ''Kindly sign the inclosed contract and return to us for our records, so that we can arrange to protect you, as we do all of our old customers at all times.''

The contract referred to in this letter was brought into the record. It is too long to set forth at length, but it, in substance, provided that appellee agreed to sell to appellant fertilizer on the conditions therein named, attaching a full list of prices and the terms upon which the fertilizer was to be sold by the appellee to the appellant, which contract was substantially the same as that under which the note sued on was executed. This contract concludes as follows: ''Not valid until approved at the office of the Arkansas Fertilizer Company. Approved, this the ...... day of ........................, 192...... Signed this 7th day of February, 1922. J. J. Ray, buyer. Arkansas Fertilizer Company, by ........................, vice president.'' The appellant signed the contract, as above stated, on the 7th of February, 1922, and returned it to the appellee. On February 16 appellee wrote appellant, inclosing some joint notes, and, referring to appellant's letter of December 28, 1921, stated: ''You are not saying anything to me, Mr. Ray, about carrying you over for this, other than you are not able to pay it. Now, I am not satisfied with that kind of a statement. I want security, and, if I can get security, I am willing to furnish you additional fertilizer this season on another note, or on a note combining what you need this season with that we are having to carry you from last season, and give you the extended time and an opportunity to pay.'' And further, ''with

reference to the order for fertilizer, which you have sent to us, I am not going to book it at all until I hear from you, and I want you to get your farmer friends to go on one note to cover this order. If they are not willing to do that, Mr. Ray, you certainly cannot afford to have them give you their individual notes. * * * In the meantime, you furnish us with some kind of security that will justify us in carrying the balance that you are due us, and we will be glad to give you an opportunity to pay up and get even; but I am not going to do it, Mr. Ray, on just a plain or a past-due note; so we may as well get together and get our affairs up.''

The appellant wrote the appellee, February 20, 1922, in which letter he states, among other things: "In regard to my past-due note, will say that I have a pair of mules that cost me $800 about a year ago. There is a mortgage on them for $150, which is to be paid next fall. I can give you a second mortgage on them to secure that note." Appellant stated that, in regard to the season's business, he was giving his time, interest and energy in securing orders for tonnage, and getting the best men in the county, but that it would be useless to ask them to sign a joint note for the fertilizer they ordered. He concluded this letter by saying: "I am inclosing an additional order for 27 tons, and I leave it up to you to fill them, or say no. There is no time to lose, for the farmers are getting ready to begin for this season's crop, and I must fill these orders now or lose them."

Appellee wrote appellant, in answer to this letter, on February 25, stating: "We do not care to depart from our rule of having a joint note, properly approved, before shipment is made, and if you cannot get these parties to make up order in that way, we will be compelled to decline to fill the order which you have sent in." In this letter appellee inclosed a new note, and a mortgage to be executed on appellant's mules.

On March 21, 1922, appellant wrote appellee, inclosing a list of farmers who wanted fertilizer, and an order for the amount wanted by them, and stating, "I hope you

will be able to fill same, for it is very necessary in order for me to pay the note which you hold against me. I am very sorry indeed that you saw fit not to fill my orders. For I could easily have sold enough fertilizer to have paid my note which you hold." A postscript follows: "P. S. Order calls for 24 tons Standard Fertilizer No. 8." On April 10 appellee wrote appellant, stating that it had not received the new note and mortgage which appellant had agreed to sign, and asking appellant to give the matter prompt attention. On April 15 appellant wrote appellee, stating that he had not signed the note and mortgage for the reason that appellee had not furnished the fertilizer unless all the farmers would make and sign a joint note, which proposition was unreasonable, and beyond appellant's power to compel them to do, and further reminding appellee that appellant could not pay because appellee had cut off his only resource for obtaining revenue with which to pay, in not filling the orders he had sent in, and stating that the opportunity was then past and gone for the year, and he would have to leave the matter with the appellee to do the best it could.

On April 19 appellee wrote appellant, among other things, saying: "We would interpret your letter to mean that you refuse to consider that you owe us anything. We inclose stamped envelope for your reply." On April 22 appellant wrote the appellee, saying: "I do not refuse to pay you. I do not pay you because I cannot. I cannot because I have not got the money, and I cannot get it. I charge you for the profit on 71 tons, the actual amount that I have taken orders for and sent to you, and you refused to fill, making a total amount of $213, at $3 per ton." Appellee wrote the appellant, on April 24, stating, in substance, that it had not agreed to extend the appellant credit, and asking if appellant was willing to give the security he offered, and saying, "If you are, you will execute the note and mortgage as recently sent you, and return to us, and, unless we hear from you within the next very few days, we shall understand your silence to mean that you want us to resort to other means to collect."

On May 22 appellee wrote the appellant, demanding a settlement with either the money or a new note and the proper security, and requesting appellant to reply at once. May 27 appellant wrote the appellee, stating, among other things, "Now, gentlemen, the facts are these: You agreed to extend me credit for this year for fertilizer to sell and to use, and the profits were to be applied on my note, and on the strength of that agreement I was to give you security for the 1921 note and $501.39, which agreement I stood ready to execute, but you refused to furnish the fertilizer except under the conditions that was impossible for me to comply with, and those conditions were not mentioned until you refused to fill my orders, so I shall hold you responsible for my commission on 71 tons of fertilizer you refused to fill. With that credit I will renew the note, but I am not in a position to secure it without further protection to myself."

June 7 appellee wrote appellant, denying, in substance, that it had entered into the agreement referred to in appellant's last letter, and saying that appellant had not, under any form of contract, worked for appellee on a commission basis, and denying that it had agreed to pay the appellant the commission, and expressing willingness to adjust the matter, if it could be done, but stating that, if it could not be, appellee would immediately take it into court, and telling appellant, if he wanted to talk it over further, appellee would be glad to do so. The appellant did not reply to this letter.

The oral testimony for the appellee and the appellant was substantially the same as that set forth in the above correspondence. At the conclusion of the testimony the appellant asked that the issue of fact be submitted to the jury on proper instructions. This request the court refused, but instructed the jury to return a verdict in favor of the appellee. The appellant duly excepted to this ruling of the court. The jury returned a verdict in favor of the appellee in the sum of $530.13.

Judgment was entered accordingly, from which is this appeal.

1. Since the court directed a verdict against the appellant, the evidence must be given its strongest probative force in his favor. *Jones* v. *Lewis*, 89 Ark. 368. But, when this is done, we are unable to find any testimony in the record which would have justified the court in submitting to the jury the issue as to whether or not the appellant and the appellee had entered into a contract by which the appellee was to ship to the appellant fertilizer to be sold by the appellant on commission, or a profit of $3 per ton, as he claims. On the contrary, the undisputed evidence shows that there was no contract of this kind between the appellant and appellee. The trial court ruled correctly in so holding and in directing the jury to return a verdict in favor of the appellee. The oral testimony of appellant does not show that any different contract was entered into from that, the form of which was sent by the appellee to the appellant, as set out above. The testimony of the parties did not establish any facts different from those disclosed in the correspondence above set forth. There is nothing in the oral testimony, or in the letters, that would justify a finding that there was a meeting of the minds of the parties on the terms of the contract, such as appellant contends was entered into. The written form of contract inclosed by the appellee in a letter to the appellant, by its own express terms, did not become a valid and binding contract until it was approved at the office of the appellee. It was never signed by the appellee, and never so approved. After appellant had signed the proposed contract and returned the same to the appellee, the letters of the appellee advised the appellant promptly, and in unmistakable terms, that it would not book his orders until he had given security for the note in controversy and agreed to comply with the conditions specified for future sale—that is, until the purchasers had executed joint notes with the appellant for the fertilizer furnished appellant by the appellee. Appellant failed to comply

with these terms and conditions. He did not execute the mortgage, as additional security, and he refused to agree to have the parties who purchased fertilizer to sign joint notes, stating that it was impossible for him to obtain same. But the reasons given are immaterial. This testimony only goes to prove that there was no contract by the appellee with the appellant which would warrant the court in allowing the latter the credit which he claims on the note in controversy.

The judgment of the circuit court is therefore correct, and it is affirmed.